■ In the Matter of FRED CHASALOW et al., Respondents, v BOARD OF ASSESSORS OF THE COUNTY OF NASSAU et al., Appellants. [609 NYS2d 27] —In proceedings pursuant to CPLR article 78 to review 10 separate determinations made in tax certiorari proceedings pursuant to RPTL, the Board of Assessors and the Board of Assessment Review of the County of Nassau appeal from an order and judgment (one paper) of the Supreme Court, Nassau County (McGinity, J.), entered March 31, 1993, which, *inter alia,* (1) determined that the appellants' current method of assessing Class I residential property is illegal and unconstitutional, (2) determined that the appellants' method of assessing Class I property for the 1988/1989 tax year was illegal and unconstitutional, and (3) directed the appellant Board of Assessors of the County of Nassau to "promulgate all future assessed values for Class One properties at a uniform percentage of value, as mandated by Section 305 (2) of the Real Property Tax Law, but not later than the assessment roll published and finalized for the 1994/95 tax year".

Ordered that the order and judgment is reversed, on the law, with one bill of costs payable by the respondents appearing separately and filing separate briefs, the assessments on the petitioners' properties are confirmed, and the proceedings are dismissed.

In these proceedings, the Supreme Court determined, *inter alia,* that the method of assessment currently employed by the Board of Assessors of Nassau County to assess Class I residential property is illegal and unconstitutional. We reverse.

Nassau County employs a cost method in its assessment of Class I residential properties. Under this approach, improvements on Class I parcels are valued at their replacement costs, in 1938 dollars. To this is added an amount reflecting the value of the parcel's land. The land valuation is based on the last County-wide assessment which was performed in 1938,

updated yearly until 1964, when vacant land was valued at one-third of market value.

The petitioners attempted to show that this system, as applied, caused such gross disparities in the tax burden imposed upon similarly situated taxpayers as to create a constitutional violation under the Equal Protection Clauses of both the Federal and State Constitutions. In support, the petitioners relied on a statistical calculation known as "the coefficient of dispersion" *(cf., Matter of Chasalow v Board of Assessors,* 176 AD2d 800).

We have previously observed: "Generally, a coefficient of dispersion is a statistical comparison of 'the closeness of assessment ratios of individual parcels to each other' (9 NYCRR 185-4.2 [b]). A high coefficient of dispersion indicates a high degree of variance with respect to the assessment ratios under consideration. A low coefficient of dispersion indicates a low degree of variance. In other words, a low coefficient of dispersion indicates that the parcels under consideration are being assessed at close to an equal rate *(see,* 9 NYCRR 185-4.4)" *(Waccabuc Constr. Corp. v Assessor of Town of Lewisboro,* 166 AD2d 523, 524).

Testimony of one of the petitioners' experts established that the New York State Board of Equalization and Assessment (hereinafter SBEA) determined that, in 1986, the coefficient of dispersion for Class I property in Nassau County was 20.12%. That expert testified that a subsequent study performed with respect to the 1988 tax roll generated a coefficient of dispersion of 16.64%. When the data used in this latter study was adjusted to conform to certain updated parameters, the coefficient of dispersion rose to 18.18%. It should be noted that the County's expert disputed the application of these updated parameters. In his opinion, the appropriate coefficient of dispersion for 1988 should remain the initial figure that was derived—16.64%.

The rules of the SBEA provide that "[t]he standards for acceptable uniformity are a [coefficient of dispersion] of 10 percent for residential property and 15 percent for all property classes combined" (9 NYCRR 185-4.3 [c]). However, the petitioners' expert acknowledged that the SBEA regulations merely provide goals for taxing jurisdictions, and no penalty is imposed for violating the standards in the regulations *(see,* RPTL 202). Moreover, the County's expert expressed the opinion that the proper standard to apply to a taxing jurisdiction such as Nassau County was 15%.

Significantly, the report prepared by the SBEA with respect to the 1986 data established that in that year, only 7.2% of all assessing units in the State of New York met the SBEA's residential standard for a coefficient of dispersion. Statewide, the report indicated that the coefficient of dispersion was between 19.5% and 19.6%. According to calculations made by the petitioners' expert, in 1986 the residential coefficient of dispersion for the Town of Brookhaven in Suffolk County (the largest municipality in Suffolk) was 22.14%. The coefficient for the Town of Huntington was 17.62% and the coefficient for New York City was 25.84%. Based on a report released by the Federal Government, nationwide the coefficient of dispersion in 1982 was 21.3%. The New York State average coefficient of dispersion was 23.1%.

It is well settled that in the area of real property taxation, rough equality, not complete uniformity, is all that is required *(see, Foss v City of Rochester,* 65 NY2d 247; *People ex rel. Hagy v Lewis,* 280 NY 184; *People ex rel. Warren v Carter,* 109 NY 576; *Matter of Mid-Island Shopping Plaza v Podeyn,* 25 Misc 2d 972, *affd* 14 AD2d 571, *affd* 10 NY2d 966; *see also,* 5A Warren's Weed, New York Real Property, Taxes and Assessments, §§ 3.04, 5.03 [3d ed]). It has also been held that "gross disparities" in the taxation of similarly situated taxpayers can constitute a violation of the constitutional right to equal protection of the laws *(see, Allegheny Pittsburgh Coal v Webster County,* 488 US 336, 338; *cf., Nordlinger v Hahn,* 505 US —, 112 S Ct 2326 [1992]). As the Court of Appeals has observed, if a classification between taxpayers is palpably arbitrary or involves an invidious discrimination, an equal protection violation will be found *(see, Foss v City of Rochester,* 65 NY2d 247, 256-257, *supra; see also, Trump v Chu,* 65 NY2d 20; *Nash v Assessor of Town of Southampton,* 168 AD2d 102).

The petitioners' evidence does not meet the rigorous requirements needed to establish a constitutional infirmity *(cf., Matter of Krugman v Board of Assessors,* 141 AD2d 175). Rather, that evidence merely established a moderate statistical deviation from a hypothetical norm. This deviation was in substantial conformance to both a Statewide and a national average. Moreover, there was no proof that the taxing methodology at issue makes any distinction between owners of Class I property that would constitute disparate tax treatment in a constitutional sense. Rather, the evidence supports the conclusion that reasonably equitable assessments are produced by the County's assessment methodology. Under such circumstances, we conclude that the petitioners failed to establish a

constitutional violation in the manner in which Nassau County assesses Class I property *(see, Matter of Board of Mgrs. v Board of Assessors,* 197 AD2d 620).

The petitioners' challenge to Nassau County's fractional assessment and their remaining contentions are without merit *(see,* Real Property Tax Law § 305 [2]; *Stemmer v Board of Assessors,* 97 AD2d 979; *C.H.O.B. Assocs. v Board of Assessors,* 45 Misc 2d 184, *affd* 22 AD2d 1015, *affd* 16 NY2d 779; *Matter of Mid-Island Shopping Plaza v Podeyn,* 25 Misc 2d 972, *supra).*

While the petitioners have failed to sustain their claim of a violation of the Equal Protection Clause based upon the coefficient of dispersion, we would note that certain evidence adduced at this hearing signals the possibility of problems in the future. It appears that the treatment by the Board of Assessors of reductions in assessed value achieved by means of judicial review might conceivably be viewed as creating a disparate form of assessment. The record before us is inadequate to make such a determination at this time, but does raise the spectre that continued constitutional challenges to assessments in Nassau County will be forthcoming unless remedial action is taken. Sullivan, J. P., Joy, Friedmann and Goldstein, JJ., concur.